UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HEIDI M. GRAHAM,<br><br>                           Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE. Commissioner of<br>Social Security,<br><br>                           Defendant. | Case No. 3:11-cv-05948-BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for November 2, 2012 |

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On May 21, 2007, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging disability as of April 30, 2001, due to depression, post traumatic stress disorder ("PTSD"), social paranoia, and anxiety. See Administrative Record ("AR") 16, 153, 156, 177. Both applications were denied upon initial administrative review on

REPORT AND RECOMMENDATION - 1

August 23, 2005, and on reconsideration on February 19, 2008. See AR 16. A hearing was held before an administrative law judge ("ALJ") on July 29, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 32-69.

On November 19, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 16-25. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 13, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On November 22, 2011, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #3. The administrative record was filed with the Court on March 14, 2012. See ECF #11. The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues defendant's decision should be reversed and remanded for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in rejecting the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity; (5) in finding her to be capable of returning to her past relevant work; and (6) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be reversed and that this matter be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been

REPORT AND RECOMMENDATION - 2

applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

REPORT AND RECOMMENDATION - 4

(citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson, 359 F.3d at 1195; see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. The opinion of a non-examining physician, however, may constitute substantial evidence only if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff challenges the ALJ's evaluation of the objective medical evidence in the record, which reads in relevant part as follows:

> . . . [Paul] Michel[s, M.D.,] opined that the claimant's symptoms do not meet the criteria for PTSD, and her description of her depressive and anxiety-type symptoms are not consistent with the severity she reports. He also reported that her anxiety symptoms did not meet the criteria for any diagnosis (Ex. 5F, pg. 6). Dr. Michel[s]'s opinion is accorded significant weight as it is based upon an objective examination and is consistent with the medical evidence of record and the claimant's reported abilities.
>
> State agency psychologist, Jenny Gardner, Ph.D., and Thomas Clifford, Ph.D., opined that the claimant was capable of completing complex and detailed tasks and sustain [sic] concentration for at least two hours at a time. They found that she was able to interact with co-workers and a supervisor in a non-public setting (Exs. 13F, 14F, 18F). These opinions are given controlling weight because they are consistent with the medical evidence of record, the opinions of treating and examining psychologists, and the claimant's actual abilities.
>
> The claimant underwent several psychiatric examinations [performed by

REPORT AND RECOMMENDATION - 5

> Norma L. Brown, Ph.D.,] for the Washington State Department of Social and Health Services (DSHS) (Exs. 4F, 8F, 9F, 15F, 19F). The opinions offered in these examinations are not supported by objective evidence and are based upon the claimant's subjective complaints that are less than credible. Further, the opinions are inconsistent with those of Drs. Michels, Gardner, and Clifford, and the overall evidence of record. Accordingly, they [are] given minimal weight and are not adopted.
>
> The treatment records from Kitsap Mental Health indicate only the claimant's subjective complaints, which have been established as less than credible. However[,] the treatment providers do note that the claimant does better when taking her medications and this information has been given significant weight in determining the severity of her impairments (Exs. 22F, 23F).

AR 23.

First, plaintiff argues the ALJ erred in finding Dr. Brown's opinions were not supported by objective evidence, but instead were based on her subjective complaints. The undersigned agrees the ALJ erred here. A physician's opinion that is premised on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility. See Tonapetyan, 242 F.3d at 1149; see also Morgan, 169 F.3d at 601. Here, though, the record indicates Dr. Brown based her opinions not only on plaintiff's complaints and reports, but also on the mental status examinations and psychological testing she performed.[2] See AR 355-56, 358-61, 402-03, 405-08, 440-42, 444-46, 453-54, 457-59, 560-61, 566, 586-87, 592. There is no indication Dr. Brown based her opinions more or primarily on plaintiff's complaints as opposed to the examinations and testing.[3] The objective findings, furthermore, do evidence the presence of significant depression and anxiety-related symptoms. See AR 355-56, 358, 402-

---

[2] See Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury.").

[3] See Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1200 (9th Cir. 2008) (holding ALJ does not provide valid reasons for rejecting physician's opinion, where there is nothing "to suggest" that physician "disbelieved [the claimant's] description of her symptoms, or that [he or she] relied on those descriptions more heavily than [his or her] own clinical observations in reaching" his or her conclusions).

REPORT AND RECOMMENDATION - 6

03, 440-42, 446, 453-54, 459, 560-61, 586-87.

Plaintiff goes on to argue that the ALJ erred in giving significant weight to the opinion of Dr. Michels in contrast to those of Dr. Brown, because Dr. Michels only evaluated plaintiff once in early August 2005, and thus he reviewed just one of the seven opinions Dr. Brown issued. See AR 416-21. Indeed, the other six opinions Dr. Brown issued span a period of nearly four years extending through late June 2009.[4] Given this large gap in time between Dr. Michel's opinion and the last one provided by Dr. Brown, the fact that Dr. Michels's opinion is inconsistent with those of Dr. Brown – particularly in regard to the much later ones – is not a legitimate reason for rejecting all of the latter's. Further, while it is true that Dr. Michels based his opinion at least in part on an "objective examination" of plaintiff, so too, again as discussed above, did Dr. Brown. AR 23; see also AR 419. Nor did the ALJ explain what "reported abilities" were consistent with Dr. Michels's opinion. AR 23.

Similarly, as plaintiff points out, Dr. Clifford and Dr. Gardner based their opinions only on the medical evidence in the record through late July 2007. See AR 543. Nor, once more, did the ALJ state what those "actual abilities" of plaintiff in fact were that he found to be consistent with their opinions. AR 23. The same is true regarding the "the medical evidence of record" and "the opinions of treating and examining physicians" the ALJ referenced.[5] Id. Accordingly, for

---

[4] This last, late June 2009, opinion was submitted to the Appeals Council after the ALJ issued his decision. See AR 4. Defendant does not contest the propriety of this Court's consideration of that opinion in reviewing the record overall, to determine whether the ALJ's decision is supported by substantial evidence, even though the ALJ herself cannot be faulted for not considering it. Indeed, the Ninth Circuit has held that such additional evidence may be considered. See Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993) ("[W]e consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council."); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (additional materials submitted to Appeals Council properly may be considered); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) (evidence submitted to Appeals Council is part of record on review).

[5] It is insufficient for an ALJ to reject a physician's opinion by merely stating, for example, that there is a lack of medical evidence in the record to support that opinion, or, as in this case, that the evidence supports it. As the Ninth Circuit has stated:

REPORT AND RECOMMENDATION - 7

all of the above reasons, the undersigned finds the ALJ erred in her evaluation of the opinions of Drs. Brown, Michels, Gardner and Clifford.

The undersigned disagrees, however, that the ALJ erred in her evaluation of the treatment records from Sally Fleischman, M.D., Rachel McElvain, PA-C, and Thomas Hansen, NP. See AR 497, 501, 503-04, 511-12, 521-22, 623.  Plaintiff notes those records show that she was diagnosed with various mental impairments, that she was prescribed a number of psychotropic medications, many of which were reported to be not effective or resulted in side effects, that she reported symptoms she was experiencing, and that she had been hospitalized for a suicide attempt when she was age 16.  But as noted above, the ALJ "need not discuss *all* evidence presented," and instead must only explain why "significant *probative* evidence has been rejected." Vincent, 739 F.3d at 1394-95 (9th Cir. 1984) (emphasis added); see also Cotter, 642 F.2d at 706-07; Garfield, 732 F.2d at 610.  These treatment records, plaintiff asserts, constitute such evidence, because they are consistent with the opinions of Dr. Brown.

The mere fact that a diagnosis has been made or that medications have not been effective or have resulting side effects, however, does not by itself show plaintiff suffers significant work-related limitations. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability).  In addition, as discussed in greater detail below, the ALJ did not err in discounting plaintiff's credibility regarding her subjective complaints, and therefore she was not obligated to accept as true the symptoms plaintiff reported to her treatment providers.  More importantly, however, none of the above treatment providers actually found, let

---

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. . . .

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) (internal footnote omitted).

REPORT AND RECOMMENDATION - 8

alone indicated, that plaintiff's diagnoses or her reported symptoms have resulted in significant work-related limitations, let alone disabling ones. The same is true with respect to the medical evidence in the record from Julie Kasnick, M.A. See AR 379-83.[6]

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of

---

[6] It is true that Ms. Krasnick gave plaintiff a global assessment of functioning ("GAF") score of 52 (see AR 382), which indicates "'[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) at 34). A GAF score, however, is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). Thus, while the GAF score given by Ms. Krasnick is "relevant evidence" of plaintiff's ability to function mentally, as discussed above the ALJ was not required to adopt it given that, again as discussed in greater detail below, she did not err in finding plaintiff less than fully credible. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). In addition, there is no indication that this GAF score is at odds with the ALJ's findings regarding plaintiff's mental functional capacity (see AR 20), and indeed the moderate difficulties that score implies contradicts the much more severe mental functional limitations assessed by Dr. Brown.

REPORT AND RECOMMENDATION - 9

malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ in this case discounted plaintiff's credibility in part because "[t]he objective evidence" revealed her impairments to be "not as severe as alleged," finding specifically that her "alleged difficulty with concentration and distraction" were "contradicted by objective testing by Dr. Michel[s] that showed no deficits in concentration." AR 21; see also AR 22 (noting further that while plaintiff "testified that in 2008, she worked at a sporting goods store for two months and alleged that she left because she was unable to concentrate well enough to arrange shoes as she was supposed to[,] . . . testing has contradicted her claims of concentration difficulties"). As discussed above, though, the ALJ did not properly evaluate the medical evidence in the record, including that provided by Dr. Michels. As noted by plaintiff, furthermore, while Dr. Brown essentially found no cognitive deficits (see AR 347, 349-50, 358, 404, 407, 442, 445, 455, 562, 588, 592), testing she administered did indicate at least some issues in regard to concentration and distraction due in part to anxiety (see AR 358, 442, 566). While this evidence clearly is mixed,[7] the ALJ did not address this conflict in discussing this reason for discounting plaintiff's credibility. As such, the ALJ erred. Plaintiff, however, has not shown that this error "tainted" the ALJ's entire assessment of her credibility. ECF #15, p. 13. Accordingly, the undersigned

---

[7] See Allen, 749 F.2d at 579 (court may not reverse credibility determination where it is based on contradictory or ambiguous evidence).

REPORT AND RECOMMENDATION - 10

1  declines to find so.

2  The ALJ next discounted plaintiff's credibility in part because:

> The claimant's allegations of inability to work are inconsistent with the fact that the claimant was able to work for an extended period of time as a bartender in 2005, despite alleging onset in April 2002. The claimant has also left work for reasons unrelated to her impairments. At the hearing, the claimant amended the onset date to April 31, 2002, because that was the date that she was laid off from her position as ship painter's helper. She further testified that she did not work in 2003 because she could not find a job despite looking and not because of her disabilities. She quit her job as a bartender in January 2005 because she "didn't like the drunk idiots," and it was "too frustrating," not due to any impairment (Ex. 5F, pg. 3, 4). . . .

AR 21-22. Plaintiff argues the ALJ erred in discounting her credibility on this basis, because as noted by the ALJ elsewhere in her decision, plaintiff testified that "she had panic attacks while working at the bar but was able to go home during shifts," and stated that "she missed about two out of four shifts because her anxiety kept her from going to work. AR 21; <u>see also</u> AR 42 (also testifying that she quit that job because she "just couldn't deal with the stress of working with all the . . . people"). But plaintiff's testimony and statement here directly conflict with the other evidence in the record noted by the ALJ above, indicating she left or was unable to perform the jobs she had for reasons other than her alleged disabling social functioning limitations. Further, even if as argued by plaintiff, she did not earn wages at her bartending job at a level indicating substantial gainful activity, this still leaves the fact that the record contains evidence that she left her jobs for non-disability-related reasons.

The ALJ also discounted plaintiff's allegation that she had "a fear of going out in public, accompanied by panic attacks," on the basis that she testified that she had "consistently and regularly applied for jobs both online and in person at the employer's locations." AR 22. As noted by plaintiff, however, she testified that only two of the jobs she applied for she did so in person. <u>See</u> AR 52-53. The ALJ, therefore, erred here. On the other hand, the ALJ did not err in

REPORT AND RECOMMENDATION - 11

discounting plaintiff's above allegation for the following additional stated reasons:

> . . . The claimant testified that she goes out "two or three times a week," often with other people. She reported to Dr. Michel[s] that she has a few friends with whom she is in contact socially, gets out of the house about three times weekly to go to appointments or to go to the sore with her father, and at other times she leaves the house "just to get out" (Ex. 5F, pg. 5). Additionally, the jobs in which the claimant has worked, such as a bartender and in retail, have been jobs requiring extensive public contact. However, she has never alleged any difficulties with these jobs because of public contact. The claimant also testified that she has a boyfriend whom she met while in a bar, indicating that she is capable and successful at engaging in social interaction with strangers in a public setting.

AR 22.[8] Plaintiff argues that none of these activities are meaningfully inconsistent with her testimony, but clearly being able – and even needing – to get out of the house several times a week, work in setting requiring a lot of public contact and interact with a stranger to the extent needed to form a boyfriend relationship, belies her allegation of having significant difficulties going out and interacting with others in public. In addition, while as discussed above, plaintiff did testify that she had trouble performing her bartending job because of public contact, also as discussed above, the ALJ did not err in discounting that testimony.

Although plaintiff did testify as well that her anxiety hampered her ability to perform her retail work (see AR 41), and as explained above there is medical evidence indicating her anxiety has impacted her ability to pay attention and concentrate to some extent, the ALJ's above-stated reasons are still proper. Nor did the ALJ err in discounting plaintiff's credibility on the basis that she "repeatedly failed to follow through" with mental health treatment, noting further that:

---

[8] The ALJ also noted that:

> The severity of the claimant's mental health impairments has also been questioned by Dr. Michel[s]. Dr. Michel[s] noted that the claimant's allegations of depression are inconsistent with her extensive activities of daily living. He observed that her claims of agoraphobia and social paranoia were not supported as the claimant admitted to getting out of the house several times per week and became "antsy" if she stayed at home for too long (Ex. 5F, pg. 5).

AR 23.

REPORT AND RECOMMENDATION - 12

> . . . The claimant was accepted for treatment at Kitsap Mental Health Services on December 22, 2004, attended two sessions, then failed to show up for scheduled treatment for the next two months and was dismissed from the program for failing to engage (Ex. 3F, pg. 12, 13). Additional records indicate that the claimant returned for services in June 2005 and had a handful of phone contacts with her counselor but then the records shows [sic] nearly two-year gap in service from September 2005 to May 2007 (Ex. 3F, pgs. 6-12). The claimant reported that she dropped out of treatment after one to two sessions because 'she said she was all better," and did not seek to resume treatment until she broke up with her boyfriend (Ex. 4D, pg. 4). Dr. Norma Brown questioned whether the claimant's symptoms were merely "situational" (Ex. 4F, pg. 4).
>
> Dr. Brown again questioned the severity of the claimant's symptoms in a February 20, 2008 evaluation, noting that the claimant had "low motivation to do anything she doesn't want to do," and questioned whether this was related to "learned helplessness" (Ex. 19F, pg. 3). She further noted that the claimant had a chronic history of lack of follow through (Ex. 19F, pg. 4). Dr. Brown directed that [the] "claimant should be sanctioned if she doesn't follow through" (Ex. 19F, pg. 4). Treatment was arranged at Kitsap Mental Health Services, the claimant appeared for one session on April 24, 2008, then failed to show for appointments in May and June and was subsequently dismissed from the program in June 2008 for failure to respond (Ex. 20F). Furthermore, at the one session she did attend, the claimant did not complain of depression or anxiety, rather she discussed having anger management issues regarding her boyfriend and stated that she "has never felt" that counseling benefits her (Ex. 20F, pg. 4).

AR 22. Failure to assert a good reason for not following a prescribed course of treatment, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The record does contain evidence that plaintiff has had some difficulty getting access to such treatment. See AR 417, 512, 521, 563. However, it contains even more evidence that plaintiff's failure to follow through was due to other reasons that have not been fully justified. See AR 348, 374, 384-85, 405, 417-18, 456, 560, 589. Nor does the evidence the ALJ outlined above "for the most part" confirm that plaintiff "has limited insight into her mental illness." ECF #15, p. 16. Plaintiff points to nothing in the record to suggest such limited insight, nor does the undersigned find any evidence thereof.

REPORT AND RECOMMENDATION - 13

Not all of the ALJ's stated reasons for discounting plaintiff's credibility were proper as discussed above. However, the fact that some of the reasons given for discounting plaintiff's credibility were improper does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case for the reasons discussed herein. See Tonapetyan, 242 F.3d at 1148; Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record"). Accordingly, it is proper to uphold the ALJ's credibility determination in this case.

IV.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains lay witness evidence, which the ALJ addressed as follows:

> The claimant's father completed a statement on behalf of the claimant. He stated that the claimant has had anger management and emotional control problems since she was an infant (Ex. 22E, pg. 2). Her father stated that the claimant has been unable to hold a job because "if she does not understand how to do a task she will become angry and just give up" (Ex. 22E, pg. 4). He further noted that the claimant "gets sidetracked in all her pursuits. Part is lack of concentration and the other is total lack of self-confidence" (Ex. 22E, pg. 5). These statements are given little weight. The claimant's father reports

REPORT AND RECOMMENDATION - 14

> symptoms not reported by the claimant regarding anger management issues. Further, he claims she had difficulties since a child but has worked with all the same alleged impairments successfully in the past, contrary to his allegation that she has not been able to hold down a job. Further, his stated opinions regarding her impairments are inconsistent with the objective medical evidence, the opinions of the medical professionals and the claimant's demonstrated abilities.

AR 23-24. The undersigned agrees with plaintiff that the ALJ failed to provide valid, germane reasons for rejecting her father's statement here.

First, with respect to the alleged anger management issues, the ALJ herself earlier noted plaintiff had "discussed having anger management issues" at a mental health treatment session. AR 22. In addition, plaintiff's father did not state plaintiff has never been able to hold a job, but that she "cannot" do so. AR 331. The ALJ also does not state with any specificity what objective medical evidence or which of plaintiff's demonstrated abilities are inconsistent with her father's statement. As discussed above, furthermore, the ALJ erred in evaluating the medical evidence in the record concerning plaintiff's mental impairments and limitations.

V.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine

REPORT AND RECOMMENDATION - 15

whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found that plaintiff had the residual functional capacity to perform "**a full range of work at all exertional levels**," but that she was "**limited to working in a non-public setting and should not have public contact**." AR 20 (emphasis in original).  Plaintiff argues the ALJ erred here by failing to include in her RFC assessment all of the limitations found by Dr. Brown.  The undersigned agrees that because the ALJ erred in rejecting the opinions of Dr. Brown as discussed above, it cannot be said that the ALJ's assessment of plaintiff's residual functional capacity is supported by substantial evidence at this time.

VI.     The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff to be capable of performing her past relevant work as a ship painter helper, because it did not require the performance of work-related activities precluded by the above RFC assessment. See AR 24.  Plaintiff has the burden to show she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  Plaintiff again has met that burden at this time, as the undersigned once more agrees with plaintiff that this finding was improper, given that the

REPORT AND RECOMMENDATION - 16

ALJ's RFC assessment itself was erroneous.

VII.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 65-66.  In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform not only her past relevant work as a ship painter helper, but other jobs as well. See AR 66.  Based on the testimony of the vocational expert, the ALJ found in the alternative that plaintiff was capable of performing other jobs existing in significant

REPORT AND RECOMMENDATION - 17

numbers in the national economy. See AR 24-25.

Once more the undersigned agrees with plaintiff that the ALJ erred here, given that her step five determination is based on an erroneous RFC assessment, and therefore is not supported by substantial evidence. The undersigned disagrees, though, that the ALJ was required to find plaintiff disabled based on the improperly discredited medical and lay witness evidence, given that as discussed above, there is other evidence – including other objective medical evidence – in the record indicating plaintiff is not disabled, and that the ALJ properly found her to be not fully credible regarding her subjective complaints.

VIII.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental impairments and limitations and the lay witness evidence in the record, it is appropriate to remand this matter for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **November 2, 2012**, as noted in the caption.

DATED this 17th day of October, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19